Rocco A. Parella, J.
The plaintiffs are a firm of New York attorneys who bring this action against a former client, H. P. Drewry, S. A. R. L., a foreign corporation (hereinafter called “ Drewry ”), to recover the sum of $25,447.79 for professional legal services allegedly rendered and disbursements made on behalf of Drewry.
The complaint alleges that in December, 1946 plaintiff commenced an action in this State upon a judgment which Drewry had obtained in the courts of England against the defendant Aristotles Onassis (hereafter called “ Onassis ”). That thereafter, and in or about the latter part of 1950 or in the early part of 1951, the defendants herein, Drewry and Onassis, settled the said action and that Onassis paid to Drewry the sum of 110,000 pounds sterling in full settlement thereof. Plaintiffs allege that they acquired a lien on the cause of action under section 475 of the Judiciary Law of the State of New York, and pray not only that the lien be ascertained against the defendants but also for judgment.
The answer consists of denials of all material allegations of the complaint. The evidence discloses that in 1942 Drewry obtained a judgment against Onassis in the High Court of Justice of England, King’s Bench Division, in a sum equal to $362,489.05. Thereafter, Drewry, through its English solicitors engaged plaintiffs to commence an action in the State of New York against Onassis on this judgment. The action was duly commenced but later the court held that the action would not then lie because Drewry was under the disability of the " Trading with the Enemy Act ” (H. P. Drewry, S. A. R. L. v. Onassis, 266 App. Div. 292, affd. 291 N. Y. 779). Plaintiffs were paid in full for these services. In October, 1946, after the termination of hostilities, plaintiffs were again retained to commence an action in the New York courts on the same judgment against Onassis. In December, 1946 plaintiffs commenced this action. Immediately, negotiations followed, resulting in an offer by Onassis to settle the action in New York and the judgment obtained in England for the sum of 93,500 pounds sterling. The plaintiffs submitted the offer to Drewry’s English solicitors and at the same time informed the solicitors that their fee for legal professional services was $25,000. Drewry refused to pay *442 • said sum and instructed plaintiffs to terminate all further discussion with Onassis in this connection and to inform Onassis as to the reason therefor. This plaintiffs reluctantly did.
Early in 1947, Onassis engaged and instructed a solicitor in England to undertake to reopen proceedings in the British court. In March, 1949, after a trial in the High Court of Justice of England, King’s Bench Division, the judgment against Onassis was vacated and set aside. On appeal to the Court of Appeals of the High Court, that decision was reversed and the original judgment against Onassis was reinstated. However, leave was granted to Onassis to appeal to the House of Lords upon condition that Onassis pay into court the sum of 50,000 pounds. The condition was met with and the case was set down for argument. In the meantime, the reopening of the litigation in England caused a stay of all proceedings of the action in the New York court pending the outcome of the English litigation. Late in 1950 Onassis and Drewry entered into negotiations in England to settle the controversy. In February, 1951 the English judgment was settled for 110,000 pounds. By the terms of the settlement Drewry was to bear the counsel fees incurred in New York in connection with the current American proceedings. Plaintiffs made a number of demands upon Drewry for payment of the sum of $25,000 for services rendered and the sum of $447.79 for disbursements. Payment was refused by Drewry as being excessive, but it did transmit, on two occasions, the sum of $750 as an offer in full payment, which offers were rejected by the plaintiffs. The plaintiffs rely upon section 475 of the Judiciary Law, which reads in part as follows: ‘ ‘ From the commencement of an action, * * * the attorney * * * has a lien upon his client’s cause of action, * * * and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment ”.
The statute is remedial in purpose and should be construed liberally (Matter of Herlihy, 274 App. Div. 342). The statute creates a duty on the part of the defendant to protect the lien of plaintiff’s attorney and if he disregards it he does so at his peril (Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 492; Peri v. New York Central & H. R. R. R. Co., 152 N. Y. 521). In the Peri case (supra) the court, at pages 527-528 stated: ‘' The lien operates as security, and if the settlement entered into by the parties is in disregard of it and to the prejudice of plaintiff’s attorney, by reason of the insolvency of his client, or for other sufficient cause, the court will interfere and protect its officer ”. (Emphasis supplied.)
*443 Defendant Onassis was fully aware of the services rendered . by plaintiffs in behalf of their client, Drewry, in attempting to enforce the collection of the judgment obtained in the English court. He and his attorneys also knew that plaintiffs had not been paid and that there was a dispute between them and their client Drewry as to the value of the services. Onassis, by settling with Drewry, without the knowledge and consent of plaintiffs, did so at his peril and upon the settlement he should have ascertained the amount due to plaintiffs and retained it or should have provided to have it retained for them (Fischer-Hansen v. Brooklyn Heights R. R. Co., supra).
There is no merit to the contention of the defendant Onassis that an essential element of plaintiffs’ case is proof of insolvency or irresponsibility of their client, Drewry. True, the cases of Peri v. New York Central & H. R. R. R. Co. (supra) ; Fischer-Hansen v. Brooklyn Heights R. R. Co. (supra); Oishei v. Pennsylvania R. R. Co. (117 App. Div. 110), and Sargent v. McLeod (209 N. Y. 360) deal with insolvent and irresponsible plaintiffs, but it does not follow that absence of insolvency would defeat plaintiffs’ action. As indicated in Peri v. New York Central & H. R. R. R. Co. (supra) the court will interfere and protect the attorney if he is prejudiced by reason of the insolvency of his client or for other sufficient cause. It may be pointed out that in those cases where the court refused to enforce a lien against defendant (stating absence of insolvency), there was a fund within the jurisdiction of the court sufficient to satisfy the attorney’s fee.
There is no doubt that the English judgment which was settled was the basis of the New York court action commenced by the plaintiffs. The English judgment having been settled, it wiped out the cause of action here. Plaintiffs’ client, Drewry, is in a foreign jurisdiction and beyond the jurisdiction of this court. It has no assets here which can be reached by execution or otherwise. Plaintiffs should not be required to go to England or France or to any other foreign jurisdiction to determine their rights, which are fully and clearly defined and protected by section 475 of the Judiciary Law. Such a requirement “ would be granting a special immunity to nonresident litigants, a doctrine to which our courts could not subscribe.” (Morgan v. Drewry, S. A. R. L., 285 App. Div. 1, 5.)
In Robinson v. Rogers (237 N. Y. 467, 471-472) Lehman, J., in discussing the effect of section 475 of the Judiciary Law on the charging lien, stated: “ the charging lien has been not only defined but enlarged by the statute. (Judiciary Law [Cons. Laws, ch. 30], section 475.) The somewhat meager protection *444 afforded to attorneys by the courts of an earlier day was regarded as sufficient at that time, but ‘ there has been a marked advance since then, mainly through the legislature, which has been generous to the members of the legal profession, not only in costs and allowances, but also in providing a lien upon the subject of the action to secure their compensation. ’ * * * When the legislature has enlarged and defined a common-law lien its definition supersedes the definition of the courts and thereafter the exercise of the powers of the courts in respect to such lien must be consistent with the legislative definition.” To be consistent with the legislative definition compels a finding that the plaintiffs have a lien for their services which can be enforced against the defendant Onassis, who had actual and constructive knowledge and notice of the lien. Defendant having settled ‘ ‘ the claim or cause of action the lien of the plaintiff’s attorney attaches to the amount agreed upon in settlement the instant the agreement is made and the law will not permit the defendant to say it has nothing in its hands to satisfy the lien.” (Morgan v. Drewry, S. A. R. L., supra, p. 5; Fischer-Hansen v. Brooklyn Heights R. R. Co., supra; Sargent v. McLeod, supra; Matter of Levy, 249 N. Y. 168.) Accordingly, I find that the plaintiffs have established their lien against the defendants, Drewry and Onassis.
Taking into consideration all the circumstances herein, the charges made, paid and received upon earlier litigation between the same parties and the amount involved, I find that the fair and reasonable value of the legal professional services rendered by the plaintiffs, including the disbursements, is the sum of $10,447.79. The plaintiffs also seek a personal judgment against the defendants. Such a judgment is not authorized against the defendant Onassis. (Matter of Wellman v. Lipkind, 226 App. Div. 106; Sullivan v. McCann, 124 App. Div. 126; Matter of Finkelstein v. Evangelides, 176 Misc. 402; Matter of Waxstein & Gelbman, 130 N. Y. S. 2d 285; and see, also, Oesterreicher v. Oesterreicher, 64 N. Y. S. 2d 849.)
The defendant Drewry having been served and being in default, a judgment may be entered against it for the amount of the lien, together with interest. Execution may issue against the defendant Onassis for the enforcement of the lien, together with interest. The law presumes that Onassis retained sufficient to pay the sum which plaintiffs were entitled to receive. (Fischer-Hansen v. Brooklyn Heights R. R. Co., supra; Sargent v. McLeod, supra.)
The above constitutes the decision of the court as provided in section 440 of the Civil Practice Act. Settle judgment.